IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PATRICK HIGGINS & COMPANY, INC. )
and PATRICK HIGGINS, )
)
              Plaintiffs, )
)
     vs. )        Case No. 06-4111-JAR
)
BROOKE CORPORATION and )
BROOKE CREDIT CORPORATION, )
)
              Defendants. )

## REPORT AND RECOMMENDATIONS

This matter comes before the court on defendants' Motion to Compel Arbitration and

Stay all Proceedings (Doc. 8).  Plaintiffs have filed a response (Doc. 12) and an amended

response (Doc. 13)[1] to which defendants have replied (Doc. 14).  The motion is now fully ripe

for consideration.

### I.      Factual Background.

The following facts are either uncontroverted or, if controverted, construed in the light

most favorable to plaintiffs, the non-moving party.  From 1996 to 2004, plaintiff Patrick Higgins

was the founder and president of Patrick Higgins & Company, Inc., an insurance agency

incorporated in the State of Florida.[2]  In July of 2002, plaintiffs entered into a Franchise

Agreement with defendant Brooke Corporation ("Brooke Corporation") which allowed plaintiffs

---

[1] Plaintiffs did not seek the court's leave to file an amended response.  However, the
court did extend the response deadline for the present motion to December 4, 2006, the date
plaintiffs filed their amended response.  *See* Order (Doc. 11).  Further, defendants did not
comment on or object to plaintiffs' amended response.  *See* Reply (Doc. 14).  Thus, the court
will consider plaintiffs' amended response in deciding the present motion.

[2] *See* Complaint (Doc. 1) at p. 3.

to purchase Slaton Insurance of Jacksonville, Inc. ("Slaton Insurance").[3] Under this franchise

agreement, Brooke Corporation controlled the billing practices of Slaton Insurance and "owned"

plaintiffs' sales commissions, 85% of which were to be distributed to plaintiffs on a monthly

basis from a separate trust account.[4] This Franchise Agreement also contained an arbitration

clause.[5]  In order to finance the purchase of Slaton Insurance, plaintiffs obtained financing

through defendant Brooke Credit Corporation ("Brooke Credit") and formally purchased Slaton

Insurance on August 29, 2002.[6]

　　　In October 2003, plaintiffs sought a full accounting of its sales commissions from Brooke

Corporation, alleging that Brooke Corporation had not properly credited plaintiffs with all of

plaintiffs' sales commissions.[7]  At this time, Brooke Corporation advised plaintiffs to purchase

another insurance agency so plaintiffs could increase their revenues.[8]  This prompted plaintiffs to

purchase Beaches Insurance Group, P.A. ("Beaches Insurance") with financing through Brooke

Credit.[9]  This financing agreement contained an arbitration clause.[10]

　　　Between the Fall of 2003 and the Spring of 2004, plaintiffs' insurance sales continued to

------

[3] *Id.* at  4.

[4] *Id.*

[5] *See* Memorandum in Support of Motion to Compel Arbitration (Doc. 9) at Exhibit A.

[6] *See* Complaint (Doc. 1) at p. 5-6.

[7] *Id.* at 6.

[8] *Id.*

[9] *Id.*

[10] *See* Reply (Doc. 14) at Exhibit B.

increase, but plaintiffs' credited sales commissions from Brooke Corporation did not.  During this time, plaintiffs continued to complain to Brooke Corporation that it had failed to properly credit plaintiffs with their sales commissions.[11]

Between May 2004 and October 2004, plaintiffs allege that defendants "continually harassed, threatened and otherwise informed Plaintiffs . . . that their insurance agency was not profitable" and threatened to declare plaintiffs' promissory notes in default and take control over plaintiffs' insurance agency.[12]  Defendants' actions caused plaintiffs to sell their insurance agency to Brooke Franchise Corporation "an affiliate of the Defendants"[13] for significantly less than it was worth.

Plaintiffs filed the present action on September 28, 2006 against defendants Brooke Corporation and Brooke Credit, claiming breach of contract against Brooke Corporation and breach of fiduciary duty, fraudulent misrepresentation, fraud in the inducement, and conversion against both defendants.[14]  The complaint does not list Brooke Franchise Corporation as a defendant.[15]

On November 3, 2006, defendants filed a Motion to Compel Arbitration and Stay Proceedings, arguing that agreements between the parties contained arbitration clauses and thus this dispute should be settled in arbitration.  Plaintiffs respond that arbitration is not warranted

---

[11] Complaint (Doc. 1) at p. 7.

[12] *Id.*

[13] *Id* at 8.

[14] *Id.* 9-21.

[15] *See id.*

because (1) plaintiffs did not have a contract with Brooke Credit that contained an arbitration

clause and (2) the contract between plaintiffs and Brooke Franchise was induced by fraud and

thus the validity of the contract and the validity of the arbitration agreement must be decided by

the court.[16]  As detailed below, the court will recommend that arbitration be compelled and

proceedings be stayed in this matter.

## II.      Legal Standard for Motion to Compel Arbitration.

Brought under the Federal Arbitration Act [17] (FAA), a motion to compel arbitration

requires a similar standard used for a summary judgment motion.[18] Summary judgment is

appropriate when the moving party demonstrates that "no genuine issue as to any material fact"

exists.[19]  The moving party bears the burden of showing an absence of a genuine issue of

material fact and an entitlement to judgment as a matter of law.[20]  This standard, as applied to

motions to compel arbitration, requires the moving party to "present evidence sufficient to

demonstrate an enforceable agreement to arbitrate."[21]

Once the moving party has presented evidence sufficient to demonstrate an enforceable

agreement to arbitrate, the burden shifts to the non-moving party to demonstrate a genuine issue

---

[16] Amended Response (Doc. 13) at p. 1-2.

[17] 9 U.S.C. §§ 1-16.

[18] *Cravens v. Red Bull North America, Inc.*, No. 06-2324, 2006 U.S. Dist. LEXIS 86153, at *2 (D. Kan. November 16, 2006)(citations omitted).

[19] Fed. R. Civ. P. 56(c).

[20] *Spaulding v. United Transp. Union & Pac. R.R. Co.*, 279 F.3d 901, 904 (10th Cir. 2002)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

[21]  *In re Universal Serv. Fund Tel. Billing Practices Litig*, 300 F. Supp. 2d 1107, 1117 (D. Kan. 2003).

of material fact as to the making of the agreement to arbitrate.[22]  To meet this burden, "the facts 'must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein.'"[23] Should the non-moving party demonstrate a genuine issue of material fact, then a trial on this issue is necessary.[24]

**III.    Discussion**.

   **A.    Sufficient evidence exists to demonstrate an enforceable agreement to arbitrate.**

Before deciding whether defendants have established the existence of "an enforceable agreement to arbitrate," the court will address plaintiffs' argument that no agreement to arbitrate existed between plaintiffs and defendant Brooke Credit.

Plaintiffs have agreed that their Franchise Agreement with Brooke Corporation contained an arbitration clause.[25]  However, because the Franchise Agreement is only between plaintiffs and defendant Brooke Corporation, plaintiffs contend that the court could not compel arbitration as to plaintiffs' claims against defendant Brooke Credit.[26]  Plaintiffs argue that "[t]he crucial and principal agreement between Plaintiffs and Brooke Credit Corporation is the 'Agreement for Advancement of Loan' which <u>does not</u> contain any agreement to arbitrate."[27]

---

[22] *Id.* (citation omitted).

[23] *Id* (citing *Adams v. Am. Guar. & Liabl. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2002)).

[24] *Id.* (citing 9 U.S.C. § 4).

[25] Amended Response (Doc. 13) at p. 2.  The record also supports this fact.  *See* Memorandum in Support of Motion to Compel Arbitration (Doc. 9) at Exhibit A.

[26] *Id.* at 2.

[27] *Id.* at 4 (emphasis in original).

In response, defendants contend that several contracts between plaintiffs and defendant Brooke Credit contain arbitration agreements.[28]  Specifically, defendants have supplied to the court an Agreement for Advance of Loan between Brooke Credit Corporation, as lender, and Patrick Higgins & Co., Inc., as borrower for the purchase of Beaches Insurance Group.[29]  Signed October 31, 2003, the agreement provides in part:

> Arbitration.   At the option of Lender, any issue, claim, dispute or controversy that may arise out of, in connection with or relating to the Loan Documents or their breach, and which parties are not able to resolve themselves, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in a court having jurisdiction thereof.  The parties agree to use arbitration to resolve any issue, claim, dispute or controversy prior to and in lieu of filing any lawsuits, complaints, charges or claims.[30]

Defendants also have provided the court with a Franchise Agent Line of Credit Agreement between Patrick Higgins & Co., Inc., and Brooke Credit as lender, signed on December 31, 2003.  This agreement provides in part that:

> Any issue, claim, dispute or controversy that may arise out of, in connection with or relating to this Agreement (including addenda and exhibits) and/or the relationship of the parties, and which the parties are not able to resolve through mediation, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s)

---

[28]*See* Memorandum in Support of Motion to Compel Arbitration (Doc. 9).

[29]This agreement does not name Beaches Insurance Group.  However, this October 31, 2006 loan agreement corresponds with plaintiffs' claim that  "[p]laintiffs purchased Beaches Insurance Group. P.A. . . . and executed another promissory note to Defendant Brooke Credit for such purchase based on Defendant Brooke's representations that such purchase would increase their revenues and make them more profitable." Complaint (Doc. 1) at p. 6.  In their complaint, plaintiffs assert that the purchase price for the new agency was approximately $70,000 and was made "[a]round the same time" as October 2003.  *Id.*  However, the loan itself was for $62,500. *See* Reply (Doc. 14) at Exhibit B  p. 1.

[30] Reply (Doc. 14) at Exhibit B p. 12.

may be entered in a court having jurisdiction thereof.  The parties agree to use arbitration to resolve any such issue, claim, dispute or controversy prior to and in lieu of filing any lawsuits, complaints, charges or claims.[31]

Because of these documents in evidence, the court finds that plaintiffs had two contracts with defendant Brooke Credit Corporation both of which contained an arbitration clause.

### 1.        The Scope of the Parties' Arbitration Clauses.

Having determined that arbitration agreements existed between all the parties, the court must now determine whether the breadth of such arbitration clauses covers the disputes at issue. As a matter of contractual interpretation, the scope of an arbitration clause is a question of law for the court to determine so long as it is susceptible to only one reasonable interpretation and does not depend on extrinsic evidence.[32]  Generally, a strong policy exists favoring arbitration for dispute resolution.[33]

"It is legally significant that the clause is defined as 'broad' because . . . 'there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' right and obligations under it.'"[34] "When a presumption of arbitrability exists, 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration

---

[31] Amended Response (Doc. 13) at Exhibit C p. 6.

[32] *Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 13 F. 3d 330, 332 (10th Cir. 1993).

[33] *Coors Brewing Co. v. Molson Breweries*, 51 F. 3d 1511, 1514 (10th Cir. 1995).

[34] *Feil v. MBNA America Bank*, 417 F. Supp. 2d 1214, 1219 (D. Kan. 2006) (citing *Cummins v. FedEx Ground Package System, Inc.*, 404 F.3d 1258, 1262 (10th Cir. 2005)).

clause is not susceptible of an interpretation that covers the asserted dispute.'"[35] Further, "in the absence of any express provision excluding a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."[36]

In determining the broadness of an arbitration clause, courts should remember that arbitration agreements are "favored" and "are to be broadly construed with doubts being resolved in favor of coverage."[37]  An arbitration clause "is the very definition of broad" when it covers not only those issues arising out of the contract, but "even those issues with any connection to the contract."[38] Further, "an arbitration clause covering disputes arising out of the contract or business between the parties evinces a clear intent to cover more than just those matters set forth in the contract."[39] If the contract includes a broad arbitration clause then "matters that touch the underlying contract should be arbitrated."[40]

   a.      Breadth of Arbitration Clauses between Plaintiffs and Brooke

---

[35] *Id.* (citing *Local 5-857 Paper Allied-Industrial, Chemical and Energy Workers Int'l Union v. Conoco Inc.*, 320 F.3d 1123, 1126 (10th Cir. 2003)).

[36] *Paper Allied-Industrial, Chemical and Energy Workers Int'l Union v. Conoco Inc.*, 320 F.3d 1123, 1126 (10th Cir. 2003)(citing *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986)).

[37] *Feil*, 417 F. Supp. 2d at 1218 (citing *Zink* , 13 F.3d at 332).  In *Zink*, the court "[i]n reviewing" the breadth of the arbitration clause was "guided by the principal [sic] that arbitration agreements are favored and are to be broadly construed with any doubts being resolved in favor of coverage."  *Zink*, 13 F.3d at 332.

[38] *Id.*

[39] *Zink*, 13 F.3d at 332 (citation omitted).

[40] *Feil*, 417 F. Supp. 2d at 1219 (citing *Brown v. Coleman Co., Inc.*, 220 F.3d 1180, 1184 (10th Cir. 2000)).

Corporation.

The July 31, 2002 Franchise Agreement between plaintiffs and defendant Brooke

Corporation provides in part that:

> Any issue, claim, dispute or controversy that may arise out of, in connection with or relating to the Franchise Agreement (including addenda) and/or the relationship of the parties, and which the parties are not able to resolve through mediation, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in a court having jurisdiction thereof.  The parties agree to use arbitration to resolve any such issue, claim, dispute or controversy prior to and in lieu of filing any lawsuits, complaints, charges or claims.[41]

Count I of plaintiffs' Complaint claims breach of contract against defendant Brooke

Corporation for breaching *this* Franchise Agreement.[42]  Further, Count II claims defendant

Brooke Corporation breached its fiduciary duty owed to plaintiffs under this Franchise

Agreement[43] and Count VII alleges conversion of sales commissions owed to plaintiffs under the

Franchise Agreement.[44]  Counts I, II and VII of plaintiffs' Complaint are clearly  "issue[s] or

claim[s]" that "arise[] out of, in connection with or relat[e] to the Franchise Agreement."  Thus,

the arbitration agreement contained in the Franchise Agreement covers these disputes.

Count III of plaintiffs' Complaint alleges fraudulent misrepresentation[45] and Count VI

---

[41] Memorandum in Support of Motion to Compel Arbitration (Doc. 14) at Exhibit A p. 15 (emphasis in original).

[42] Complaint (Doc. 1) at p. 9.

[43]*Id*. at 11 (emphasis added).  Plaintiffs sold their insurance agency to, what plaintiff describes as "an affiliate of the Defendants" Brooke Franchise Corporation.  Defendant Brooke Franchise Corporation is not a party to the present action. *See id.*

[44] *Id.* at 19-20.

[45]*Id.* at 15

claims "fraud in the inducement"[46] against both defendants.[47]   Here, the arbitration clause

between plaintiffs and Brooke Corporation not only applies to any issue that may arise out of the

Franchise Agreement but also to any "[a]ny issue, claim, dispute or controversy that may arise

out of . . . *the relationship of the parties*. . . ."  Thus, the arbitration clause is the "very definition

of broad" because it covers "disputes arising out of the . . . *business between the parties*" and

demonstrates a "clear intent to cover more than just those matters set forth in the contract."[48]

Because the court has defined this clause as broad, a "presumption of arbitrability and arbitration

of even a collateral matter will be ordered . . . ."[49]

> **b.**     **Breadth of Arbitration Clauses between Plaintiffs and Brooke Credit.**

Count III of plaintiffs' Complaint claims fraudulent misrepresentation[50] against both

defendants, while Count VI claims fraud in the inducement[51] against both defendants who

"coerced Plaintiffs into believing that they were going to be declared in default on their

promissory notes and *other financial obligations* that Plaintiffs finally agreed to sell their

---

[46]*Id.* at 19.

[47]*Id.* at 16 (emphasis added).  Plaintiffs also asks the court to impose a Constructive Trust (Count IV) against both defendants and to award plaintiffs Attorney Fees (Count V).  *See id.* at 16-22.  The court finds these claims ancillary to the other claims and issues that are to be arbitrated and will thus not discuss them separately.

[48] *Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 13 F. 3d 330, 332 (10th Cir. 1993) (citation omitted)(emphasis added).

[49] *Feil v. MBNA America Bank*, 417 F. Supp. 2d 1214, 1219 (D. Kan. 2006)(citing *Cummins v. FedEx Ground Package System, Inc*., 404 F.3d 1258, 1262 (10th Cir. 2005)).

[50] Complaint (Doc. 1) at p. 15.

[51]*Id.* at 19.

-10-

insurance agency for significantly less than what it was worth to the detriment of Plaintiffs to Defendants and/or its affiliates."[52]

Defendants have supplied the court with documentation of another "financial obligation" between plaintiffs and defendant Brooke Credit, in the form of the Franchise Agent Line of Credit Agreement.  Like the agreement between plaintiff and Brooke Corporation, this agreement provides that "any issue, claim, dispute or controversy that may arise out of, in connection with or relating to this Agreement (including addenda and exhibits) and/or the relationship of the parties" must be settled by arbitration.[53]

Here, Counts III and IV allege that defendant Brooke Credit used its power obtained in part under the Franchise Agent Line of Credit Agreement to illegally mislead plaintiffs.  These claims stem from an issue that relates to the agreement and at the very least arise from the relationship of the parties.  Thus, the court finds that Counts III and IV of plaintiffs' Complaint are covered by the broadly worded arbitration clause and a presumption of arbitrability exists.[54]

c.     **Plaintiffs' Claims Regarding Beaches and Slaton Insurance Should be Determined by the Arbitrator.**

Count II of plaintiffs' Complaint alleges a breach of fiduciary duty by both defendants

---

[52]*Id.* at 16 (emphasis added).

[53] Amended Response (Doc. 13) at Exhibit C p. 6.

[54] *Feil*, 417 F. Supp. 2d at 1219 (citing *Cummins v. FedEx Ground Package System, Inc.*, 404 F.3d 1258, 1262 (10th Cir. 2005)).

"as a result of the Franchise Agreement and the *financing* Defendants had provided to Plaintiffs for the purchasing of Slaton Insurance and Beaches Insurance based on the applicable written contract."[55]  The court has previously established the existence of an arbitration clause between the parties for the purpose of financing Beaches Insurance.[56]  The court finds that a claim for breach of fiduciary duty against Booke Credit Corporation stemming from the financing agreement for Beaches Insurance is an "issue, claim, dispute or controversy that . . . arise[s] out of, in connection with or relating to the Loan Documents or their breach" and should thus be settled in arbitration.[57]

However, as neither party has provided the court with the financing documents between the parties related to the August 2002 purchase of Slaton Insurance,[58] the court is unable to determine if that loan agreement contained an arbitration clause.  Therefore, the court will consider whether the arbitration clauses known to the court are sufficiently broad to encompass plaintiffs' claims that defendant Brooke Credit breached its fiduciary duty owed under their agreement with plaintiffs to finance Slaton Insurance.

The court will assume in plaintiffs' favor that plaintiffs' contract with Brooke Credit to purchase Slaton Insurance did not contain an arbitration clause.  However, the court still finds that plaintiffs' claims related to the purchase of Slaton Insurance fall under plaintiffs' other

---

[55] Complaint (Doc. 1) at p. 11 (emphasis added).  Plaintiffs sold their insurance agency to what plaintiffs describe as "an affiliate of the Defendants"– Brooke Franchise Corporation. Defendant Brooke Franchise Corporation is not a party to the present action.  *See id.*

[56] *See* Reply (Doc. 14) at Exhibit A.

[57] Reply (Doc. 14) at Exhibit B p. 12.

[58] *See id.* at 4-5 ("On or about August 29, 2002, Plaintiffs formally purchased Slaton Insurance, which was financed by Defendant Brooke Credit.").

obligations to arbitrate.

### i.     Franchise Agent Line of Credit Agreement is Broad enough to Cover Any Dispute Arising out of Plaintiffs' Purchase of Slaton Insurance.

First, the Franchise Agent Line of Credit Agreement between plaintiffs and Brooke Credit Corporation is broad enough to encompass any claims that would also fall under the agreement to finance the purchase of Slaton Insurance.  This Franchise Agent Line of Credit Agreement was entered into *after* Brooke Credit financed plaintiffs' purchase of Slaton Insurance.[59]  However, the FAA "gives full force and effect to . . . retroactive arbitration provisions . . . providing for the enforceability of 'an agreement in writing to submit to arbitration an existing controversy.'"[60] Further, the Tenth Circuit has recognized that a subsequent agreement to arbitrate, when drafted broadly enough, can retroactively apply to previous claims between the parties.[61] Specifically, the Tenth Circuit has "construed the language of the [Federal Arbitration] Act broadly to cover agreements to arbitrate a dispute not arising out of the contract containing the arbitration agreement so long as the other requirements of the Act are satisfied."[62]

---

[59]  The Franchise Agent Line of Credit Agreement was executed on December 31, 2003 while the financing documents for the purchase of the Slaton Agency were executed on August 28, 2002.  *See* Complaint (Doc. 1).

[60]  *In re Universal Serv. Fund Tel. Billing Practices Litig*, 300 F. Supp. 2d 1107, 1124 (D. Kan. 2003)(citing 9 U.S.C. § 9).

[61]  *See Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 13 F.3d 330, 332 (10th Cir. 1993)(enforcing an agreement to arbitrate even as to transactions that arose prior to the agreement when the agreement mandated arbitration for "any controversy between" the parties arising out of one party's "business of this agreement.").

[62]  *Id.* at 333.

In the present case, the arbitration clause in the Franchise Agent Line of Credit Agreement contains language that arbitration will govern "[a]ny issue, claim, dispute or controversy that may arise out of, in connection with or relating to this Agreement (including addenda and exhibits) *and/or the relationship of the parties . . . .*"[63] Therefore, the court finds that the Franchise Agent Line of Credit Agreement was sufficiently broad to encompass previous disputes between the parties, including any dispute that might stem from the financing documents used to procure Slaton Insurance.  Because this arbitration clause is "broad" a "presumption of arbitrability exists" and "arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' right and obligations under it."[64]  As all doubts as to coverage should be decided in favor of arbitration,[65]  the court finds that the arbitration clause in the Franchise Agent Line of Credit Agreement covers any dispute resulting from Brooke Credit's financing of Slaton Insurance.

### ii.    Plaintiffs' Claims Against both Defendants are Sufficiently Intertwined.

Further, defendants argue that plaintiffs' claims against both defendants are "sufficiently

---

[63] *Id.*

[64] *Feil*, 417 F. Supp. 2d at 1219 (citing *Cummins v. FedEx Ground Package System, Inc*., 404 F.3d 1258, 1262 (10th Cir. 2005)).

[65]*Id.* at 1218 (citing *Zink*, 13 F.3d at 332).  In *Zink*, the court "[i]n reviewing" the breadth of the arbitration clause was "guided by the principal [sic] that arbitration agreements are favored and are to be broadly construed with any doubts being resolved in favor of coverage." *Zink*, 13 F.3d at 332.

intertwined such that fairness and equity would require those claims to be resolved together in arbitration."[66]  The court agrees.

Under the "intertwined claims theory" a signatory cannot avoid arbitration with a nonsignatory when "the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement the estopped party has signed."[67]  The intertwined claims theory applies "when the party ordered to arbitrate has agreed to arbitrate disputes arising out of a contract and is suing in reliance upon that contract."[68] The justification for the theory being that a party cannot both seek to hold the non-signatory party liable under the duties imposed by the agreement, which included an arbitration clause, and yet deny the applicability of the arbitration agreement because the defendant did not sign it.[69]  Claims can be considered "intertwined" when one party to the contract claims "substantially interdependent and concerted [] misconduct by both the nonsignatory and one or more the signatories to the contract."[70]

Here, plaintiffs seek to hold Brooke Credit responsible for Brooke Corporation's obligations under the Franchise Agreement.  Specifically, plaintiffs allege conversion by both defendants, arguing that "[d]efendants have wrongfully taken possession of all sale commissions not properly credited to Plaintiffs" under the Franchise Agreement.[71]  Plaintiffs also contend that

---

[66] Reply (Doc. 14) at p. 8.

[67] *In re Universal Serv. Fund Tel. Billing Practices Litig*, 300 F. Supp. 2d 1107, 1139 (D. Kan. 2003)(citation omitted).

[68]*Id.*

[69] *Id.*

[70] *Id.* (citation omitted).

[71] Complaint (Doc. 1) at p. 20.

both defendants "intentionally, willfully, purposefully and fraudulently withheld"[72] lists that properly showed plaintiffs uncredited sales commissions.[73]

Thus, plaintiffs seek to hold defendant Brooke Credit responsible for defendant Brooke Corporation's obligation to properly credit plaintiffs' sales commissions under the Franchise Agreement.   Further, plaintiffs' allegations against both defendants makes no distinction between the actions of the separate defendants and assert "substantial and interdependent" misconduct by both defendants.   Because plaintiffs seek to hold Brooke Credit responsible for Brooke Corporation's obligations under Brooke Corporation's agreement with plaintiffs, plaintiffs cannot now deny the applicability of the Franchise Agreement's arbitration clause simply because defendant Brooke Credit Corporation was a non-signatory to that agreement.

Having determined that defendants have provided broadly worded arbitration agreements between the parties, defendants have met their burden of presenting "evidence sufficient to demonstrate an enforceable agreement to arbitrate."[74]

**B.    Plaintiffs Have not met Their Burden of Demonstrating a Genuine Issue of Material Fact as to the Making of the Agreement to Arbitrate.**

Having found that defendants have successfully demonstrated an enforceable agreement

---

[72]*Id*. at 13.

[73] *Id.* at 14 (citing this allegation in support of Count III, fraudulent misrepresentation).

[74]   *In re Universal Serv. Fund Tel. Billing Practices Litig*, 300 F. Supp. 2d 1107, 1117 (D. Kan. 2003).

to arbitrate, the court must consider whether plaintiffs have met their burden to demonstrate a genuine issue of material fact as to the making of the agreement to arbitrate.[75]  To meet this burden, material facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[76]  The court finds that plaintiffs have not met their burden of establishing a genuine issue of material fact, and thus recommends that arbitration be compelled.

**1.      The Fraud Alleged by Plaintiffs is not Alleged as to the Contracts at Issue.**

Plaintiffs argue that arbitration is inappropriate because defendants fraudulently induced them, or committed fraud in fact, to persuade plaintiffs to sell their insurance agency to plaintiffs' detriment.[77] Plaintiffs contend that "this Court cannot order that arbitration must proceed because if the contract is void or voidable because of fraud in the factum (or in the inducement), then the arbitration clause is likewise void or voidable."[78]

Defendants respond that "[p]laintiffs are not arguing that any agreement prior to the sale of assets to Brooke Franchise Corporation was induced by fraud.  As such, any contracts preceding that sale that contain arbitration clauses are valid, and would support Defendant's [sic] motion to compel arbitration, even if Plaintiffs' fraud claims were otherwise triable to the Court."[79]   After extensively reviewing plaintiffs' complaint, the court has found no claims by

---

[75] *Id.* (citation omitted).

[76] *Id.* (citing *Adams v. Am. Guar. & Liabl. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2002)).

[77] Amended Response (Doc. 13) at p. 2.

[78]*Id.*

[79] Reply (Doc. 14) at p. 5.

plaintiffs that any contract, other than the one entered into with Brooke Franchise, involved fraud.[80]  As applicable to these defendants, the court concludes that plaintiffs' allegations of fraud in the inducement or fraud in the fact of inducing plaintiffs to sell their insurance agency to Brooke Franchise involve, at the very least, a claim or dispute arising out of the pre-existing relationship (and thus pre-existing agreements to arbitrate) of the parties to this litigation.  As such, these claims are subject to arbitration.

### 2.      Plaintiffs Only Alleged Fraud in the Inducement.

If the court were to consider plaintiffs' arguments as to fraud applicable to the contracts and arbitration clauses at issue between the parties, the court finds that plaintiffs have failed to raise a genuine issue of material fact.  In their amended response, plaintiffs argue that "the essence of the Plaintiff's [sic] claim in this case is that the Defendants fraudulently induced and/or committed fraud in the factum (or in the inducement), against the Plaintiffs by making fraudulent promises intentionally deceiving and misleading the Plaintiffs to sign and agree to the enter contract including the arbitration clause."[81]   As detailed below, the court finds that plaintiffs have only alleged fraud in the inducement.

### i.      Standard for Fraud in the Inducement.

In *Buckeye Check Cashing, Inc. v. Cardegna*,[82] the United States Supreme Court

---

[80] The court notes that plaintiffs' Complaint does state that "Plaintiffs purchased Beaches Insurance Group . . . and executed another promissory note to Defendant Brooke Credit for such purchase based on Defendant Brooke's representations that such purchase would increase their revenues and make them more profitable."  *Id.* at 6.  However, nowhere else in the complaint do plaintiffs reference these representations. *Id.*

[81] *Id.* at 2 (emphasis added).

[82] 546 U.S. 440, 126 S. Ct. 1204 (2006).

"reaffirme[ed] . . . that . . . a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, *must* go to the arbitrator."[83]  Specifically, the Federal Arbitration Act "does not permit the federal court to consider claims of fraud in the inducement of the contract generally."[84]  Moreover, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."[85]

Here, even if the court construes plaintiffs' arguments as claiming fraud in the inducement of  the contracts at issue between the parties, plaintiffs have not specifically claimed fraud in the inducement of the arbitration clauses themselves.  Consequently, under *Cardegna*,[86] arbitration should be compelled.

      **ii.**     **Plaintiffs Have not Alleged any Conduct on the part of Defendants that Would Render the Contracts at Issue Void.**

However, plaintiffs also argue in their response to the present motion that defendants have committed some kind of fraud in factum.[87]  Plaintiffs cite *Weis Builders, Inc. v. Kay S. Brown Living Trust*[88] for the proposition that "the factual disputes surrounding the claims of the Plaintiff concerning whether the contract was void should be decided by the District Court and

---

[83]*Id*. at 1211 (emphasis added).

[84] *Id*. at 1208 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-404 (1967)).

[85]*Id*. at 1209.

[86]*Id.*

[87] Amended Response (Doc. 13) at p. 2-3.

[88] 236 F. Supp. 2d 1197 (D. Co. 2002).

not by the arbitrator."[89]

Plaintiffs correctly point out that several courts have made a distinction between void and voidable contracts in the context of enforcing an agreement to arbitrate.[90]  These courts have held that the enforceability of an arbitration clause is an issue for the court to decide when one party has raised a defense against the contract that renders the contract void.[91]  In *Weis Builders, Inc.* the court held that fraud in the execution or making of the contract renders a contract void *ab initio*, rather than fraud in the inducement of the contract which makes a contract merely voidable.[92]  Further, the court in *Cardegna*, distinguished its holding regarding fraud in the inducement from the cases where one party had argued that a contract had never been formed. The Court explained that:

> The issue of the contract's validity is different from the issue of whether any agreement between the alleged obligor and obligee was ever concluded.  Our opinion today addresses only the former, and does not speak to the issues decided in . . cases . . . which hold that it is for the courts to decide whether the alleged obligor even signed the

---

[89] Amended Response (Doc. 13) at p. 3 (citing *Weis Builders Inc.*, 236 F. Supp.2d at 1200-1204).

[90]*Id.* (citing *Guang Dong Light Headgear Factory Co.*, No. 03-4165, 2005 U.S. Dist. LEXIS 8810, at *29 n.57 (D. Kan. May 10, 2005)).

[91] *Weis Builders Inc.*, 236 F. Supp.2d at 1203 at n.7.  The court in *Weis Builders Inc.*, concluded that the court and not the arbitrator would "consider the circumstances surrounding the making of the putative contract as a whole and not simply the arbitration agreement" because the issue existed as to whether "fraud in the execution of the contract" had occurred.

[92]*Id.* at 1204-1205 ("[The Third Circuit] draws a distinction between contracts that are asserted to be void or non-existent, as is contended here, and those that are merely 'voidable,' . . . for the purposes of evaluating whether the making of an arbitration agreement is in dispute. This distinction is crucial because . . . fraud in the execution . . . is a defense that voids a contract.").  Black's Law Dictionary explains void *ab initio*: "[a] contract is null from the beginning if it seriously offends law or public policy in contrast to a contract which is merely voidable at the election of one of the parties to the contract." BLACK'S LAW DICTIONARY 1574 (6th ed. 1990).

contract, . . . whether the signor lacked authority to commit the alleged principal . . . and whether the signor lacked the mental capacity to assent . . . .[93]

Defendants argue that plaintiffs' reliance on *Weis Builders, Inc*. is misplaced because plaintiffs never allege, in either their complaint or their amended response to the present motion, that any fraud in the execution occurred.[94]  The court agrees.

Plaintiffs have not alleged any type of fraud that would make the contracts at issue void and thus have not met their burden to demonstrate the existence of a genuine issue of material fact as to the making of the agreement to arbitrate.[95]  Plaintiffs do state in their amended response to the present motion that an issue exists as to whether "the contract . . . was induced by fraud or whether it is void as a result of fraud in the factum."[96]  However, this statement identifies no facts "by reference to an affidavit, a deposition transcript, or a specific exhibit"[97] in support and is thus, not a genuine issue of material fact.   Instead of citation to the record, plaintiffs confusingly explain that "the essence of the Plaintiff's [sic] claim in this case is that the Defendants *fraudulently induced* and/or committed fraud in the factum (or in the *inducement*), against the Plaintiffs by making fraudulent promises intentionally *deceiving and misleading* the

---

[93]546 U.S. 440, 126 S. Ct. 1204, 1208 at n.1 (2006).

[94] Reply (Doc. 14) at p. 3.

[95] *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 300 F. Supp. 2d 1107, 1117 (D. Kan. 2003)(citation omitted).

[96]Amended Response (Doc. 13) at p. 4.

[97]*In re Universal Serv. Fund Tel. Billing Practices Litig*, 300 F. Supp. 2d 1107, 1117 (D. Kan. 2003). (citing *Adams v. Am. Guar. & Liabl. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2002)).

Plaintiffs to sign and agree to the enter contract including the arbitration clause."[98]

Further, a review of plaintiffs' complaint demonstrates that plaintiffs do not allege any fraud in execution, fraud in factum, or any fraud that would render the contract void.[99] Specifically, plaintiffs have not alleged, as in *Weis Building Inc.*, that a one of the defendants materially changed the contracts before plaintiffs had signed them.[100]  Further, plaintiffs have not alleged, as in *Cardegna*, that they either never signed the contracts, or that they lacked the authority or mental capacity to agree to the contracts.[101]  Finally, plaintiffs have not alleged, as in the case they cite, *Guang Dong Light Headgear Factory Co. v. ACI International, Inc.*, that "there was no meeting of the minds to form" the contracts at issue.[102]  The issue as to whether the contracts between plaintiffs and the defendants ever actually existed has not been raised.

Plaintiffs further argue that Judge Robinson's decision in *Guang Dong Light Headgear Factory Co. v. ACI International, Inc.*[103] supports the proposition that "there should be no distinction between fraud in the inducement and fraud in the factum, and that the Court should make an independent determination [of] the validity of the contract and therefore the arbitrability

---

[98] *Id.* at 2 (emphasis added).

[99] *See* Complaint (Doc. 1); Amended Response (Doc. 13) at p. 2-4.

[100]In *Weis Builders, Inc.*, one party contended that the other had materially changed one of the contract's exhibits prior to the other party signing the contract.  *Weis Builders Inc.*, 236 F. Supp.2d at 1198.

[101]546 U.S. 440, 126 S. Ct. 1204, 1208 at n.1 (2006).

[102]No. 03-4165, 2005 U.S. Dist. LEXIS 8810 at *29 (D. Kan. May 10, 2005).

[103]*Id.* at *10.

of the dispute."[104]  The court disagrees.

First, the court in *Guang Dong* did not hold that fraud in the inducement and fraud in fact are indistinguishable.[105]  Rather, the court chose to make an independent determination as to the contract's validity, and therefore the arbitration clause in dispute, because defendants argued that the contracts that contained the arbitration clause had never been formed by the parties.[106]  As previously discussed, plaintiffs make no such argument here.

Additionally, the circumstances in *Guang Dong* differ significantly from the case at hand. As defendants point out, in *Guang Dong* the New York Convention, a treaty that governs multinational foreign arbitration awards, controlled and not the general requirements of the Federal Arbitration Act (FAA) that govern here.[107]   Further, in *Guang Dong*, the plaintiff sought to *confirm* an arbitration award rather than to compel arbitration as the present motion seeks.[108]  The court in *Guang Dong* could "only [find] one appellate decision," *China Minmetals Materials Import & Export Co. v. Chi Mei Corp.*[109] which "considered whether a court, *in confirming and enforcing* an [arbitration] award under the [New York] Convention may

---

[104] Amended Response (Doc. 13) at p. 3.

[105]  *Guang Dong Light Headgear Factory Co.*, 2005 U.S. Dist. LEXIS 8810, at *10

[106] *Id* at * 29.

[107] Reply (Doc. 14) at 2-3; *Guang Dong Light Headgear Factory Co.*, 2005 U.S. Dist. LEXIS 8810, at *10; *id.* at *29.

[108] *Id.* at *21 (emphasis added).  "The Court was unable to locate a Tenth Circuit decision reviewing confirmation of a foreign arbitral award under the Convention.  The Court found only one appellate decision that considered whether a court, *in confirming and enforcing* an award under the Convention may review the question of contract validity." *Id.* (emphasis in original).

[109] 334 F.3d 274, 283 (3rd Cir. 2003).

review the question of contract validity."[110]  In fact, the court in *Guang Dong* based its decision

to make "an independent determination of the . . . [contract's] validity, and therefore the

arbitrability of [the] dispute" on the substantial similarity of the facts and issues in *Guang Dong*

with the facts and issues in *China Minmentals*.[111]  As the present case does not involve either the

New York Convention or the confirmation and enforcement of a foreign arbitration award, the

court is not persuaded to follow the fact-specific holding in *Guang Dong*.

 **IV.   Conclusion**.

Because the parties agreed to submit all their claims to binding arbitration and because

plaintiffs have failed to meet their burden of demonstrating a genuine issue of material fact as to

the making of the agreement to arbitrate, defendants' motion to compel arbitration should be

granted.  Accordingly,

 **IT IS THEREFORE RECOMMENDED** that defendants' Motion to Compel

Arbitration and Stay Proceedings (Doc. 8) should be granted.

 **IT IS FURTHER RECOMMENDED** that the parties be directed to proceed to

arbitration on all of the plaintiffs' claims and that the court stay the judicial proceedings in this

case pending completion of the arbitration process.  Copies of this recommendation and report

shall be mailed either electronically or via the United States Postal Service to the parties.

Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Federal Rule of Civil Procedure 72(b) and D.

Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within

---

[110]2005 U.S. Dist. LEXIS 8810, at * 22.

[111]*Id.* at *29 ("Because this Court finds that the facts and issues of *China Minmentals* are substantially similar to the facts and issues of this case, the Court will follow that precedent . . . .").

10 days after being served with a copy.

**IT IS SO RECOMMENDED.**

Dated this 27th day of March 2007, at Topeka, Kansas.

 s. K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge