## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF KANSAS

PATRICK HIGGINS & COMPANY,  )
INC. and PATRICK HIGGINS,  )
  )
       **Plaintiffs,**  )
  )
    **vs.**  )    **Case No. 06-4111-JAR**
  )
  )
BROOKE CORPORATION and  )
BROOKE CREDIT CORPORATION,  )
  )
       **Defendants.**  )
_____)

### MEMORANDUM AND ORDER ADOPTING REPORT & RECOMMENDATIONS

This matter comes before the Court on plaintiffs' Objection (Doc. 17) to the Report and Recommendations (Doc. 16) of Magistrate Judge K. Gary Sebelius, finding that all of plaintiffs' claims were arbitrable, and thus recommending that defendants' Motion to Compel Arbitration and Stay Proceedings (Doc. 8) be granted.  The district court must review de novo, those portions of a magistrate judge's report and recommendations to which an objection is made.[1] Having considered plaintiffs' objection and defendants' response, and having reviewed Judge Sebelius's well reasoned Report and Recommendations, this Court finds that plaintiffs' objections are without merit; therefore this Court adopts Judge Sebelius's Report and Recommendations.

In short, this Court concludes that all the arbitration clauses are enforceable. Furthermore, all of the claims against defendants are arbitrable because the substance of the

---

[1] 28 U.S.C. § 636(b)(1)(C).

claims involves either: (1) breach of contracts containing an arbitration clause; (2) breach of contracts that are within the scope of arbitration clauses in other contracts; (3) collateral matters within the scope of the broad arbitration clauses; (4) matters connected with, or relating to the contracts covered by arbitration clauses; or (5) disputes relating to the parties' relationship in connection with the contracts covered by arbitration clauses.

## I.   Factual Background

Upon de novo review, the Court finds that the following facts are either uncontroverted, or if controverted, construed in the light most favorable to plaintiffs.[2]  Plaintiffs are an insurance company, Patrick Higgins & Company, Inc., and its sole owner, Patrick Higgins.  In 2002, plaintiffs purchased Slaton Insurance, financing the purchase through defendant Brooke Credit Corporation ("Brooke Credit").  To that end, plaintiffs and Brooke Credit entered into a loan agreement.  At the same time, plaintiffs and Brooke Corporation entered into a franchise agreement, in which Brooke Corporation agreed to provide accounting and processing services for insurance policies sold by plaintiffs.  Brooke Corporation was further responsible for accounting for and paying to plaintiffs, commissions earned on its sales of policies.  The 2002 loan agreement with Brooke Credit did not contain an arbitration clause, but the 2002 franchise agreement with Brooke Corporation did contain an arbitration clause, to wit:

> Any issue, claim, dispute or controversy that may arise out of, in connection with or relating to the Franchise Agreement (including addenda) and/or the relationship of the parties, and which the parties are not able to resolve through mediation, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment

---

[2] *See In re Universal Serv. Fund Tel. Billing Practices Litig*, 300 F. Supp. 2d 1107, 1116 (D. Kan. 2003) (stating that in the context of motions to compel arbitration, courts should apply a standard similar to that applicable in a summary judgment motion) (citations omitted).

> on the award rendered by the arbitrator(s) may be entered in a
> court having jurisdiction thereof.  The parties agree to use
> arbitration to resolve any such issue, claim, dispute or controversy
> prior to and in lieu of filing any lawsuits, complaints, charges or
> claims.[3]

Some time after purchasing Slaton Insurance and entering into the franchise and loan

agreements with Brooke Corporation and Brooke Credit, plaintiffs began to complain that

Brooke Corporation was not properly accounting for their sales commissions nor properly

crediting these amounts to the loan balance.  Plaintiffs' Complaint states that when they met with

Brooke Corporation to discuss their concerns, Brooke Corporation suggested that plaintiffs buy

another insurance agency to increase plaintiffs' revenues.

To that end, in 2003, plaintiffs purchased Beaches Insurance, again financing the

purchase through Brooke Credit.  The 2003 Agreement for Advancement of Loan from Brooke

Credit contained an arbitration clause, to wit:

> At the option of Lender, any issue, claim, dispute or controversy
> that may arise out of, in connection with or relating to the Loan
> Documents or their breach, and which the parties are not able to
> resolve themselves, shall be settled by arbitration administered by
> the American Arbitration Association under its Commercial
> Arbitration Rules, and judgment on the award rendered by the
> arbitrator(s) may be entered in a court having jurisdiction thereof.
> The parties agree to use arbitration to resolve any such issue,
> claim, dispute or controversy prior to and in lieu of filing any
> lawsuits, complaints, charges or claims.[4]

Plaintiffs' 2003 line of credit agreement with Brooke Credit contained an arbitration clause as

well, to wit:

> Any issue, claim, dispute or controversy that may arise out of, in

---

[3]July 31, 2002 Franchise Agreement ¶ 9.13 (Doc. 9, Ex. A at 15).

[4]October 31, 2003 Agreement for Advancement of Loan ¶ 44 (Doc. 14, Ex. B at 12).

> connection with or relating to this Agreement (including addenda and exhibits) and/or the relationship of the parties, and which the parties are not able to resolve through mediation, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in a court having jurisdiction thereof.  The parties agree to use arbitration to resolve any such issue, claim, dispute or controversy prior to and in lieu of filing any lawsuits, complaints, charges or claims.[5]

At the same time, plaintiffs entered into a franchise agreement with Brooke Franchise Corporation ("Brooke Franchise"), a subsidiary of Brooke Corporation, in which Brooke Franchise agreed to provide accounting and processing services for insurance policies sold by plaintiffs, including accounting for and paying to plaintiffs, sales commissions.  This franchise agreement also contained an arbitration clause, to wit:

> Any issue, claim, dispute or controversy that may arise out of, in connection with or relating to the Franchise Agreement (including addenda) and/or the relationship of the parties, and which the parties are not able to resolve through mediation, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in a court having jurisdiction thereof.  The parties agree to use arbitration to resolve any such issue claim, dispute or controversy prior to and in lieu of filing any lawsuits, complaints, charges or claims.[6]

Problems persisted.  Plaintiffs' Complaint states that in 2004, "Defendants continuously harassed, threatened and otherwise informed Plaintiffs during various conversations that their insurance agency was not profitable, was losing money and that expenses needed to be cut.  Further, Defendants threatened that if expenses were not cut, then Plaintiffs' promissory notes

---

[5]December 31, 2003 Franchise Agent Line of Credit Agreement ¶ 7.8 (Doc. 14, Ex. C at 6).

[6]October 16, 2003 Franchise Agreement ¶ 9.13, (Doc. 9, Ex. 2 at 16).

were going to be declared in default and that Defendants were going to accelerate the loans and take over their insurance agency."[7]  Plaintiffs' Complaint states that they were "coerced into believing that they were almost in default on their promissory notes . . . ,"[8] and on this premise, in October 2004, plaintiffs agreed to sell Patrick Higgins & Company Inc. to Brooke Franchise. Plaintiffs' Complaint further states that the sales price was premised "on Plaintiffs['] belief and Defendants['] representation that they had been properly credited for all of their sales commissions between September 2002 and October 2004."[9]  Thus, plaintiffs claim that they unwittingly sold Patrick Higgins & Company to Brooke Franchise for much less than it was worth.

Plaintiffs filed this action against Brooke Corporation and Brooke Credit, bringing claims for breach of contract, breach of fiduciary duty, fraud, constructive trust, conversion and attorneys fees.  Plaintiffs did not name Brooke Franchise as a party defendant in this action.

## II.   Discussion

Defendants filed a Motion to Compel Arbitration and Stay all Proceedings claiming that all claims were subject to arbitration based on the arbitration clauses in various agreements between the parties.  Under the Federal Arbitration Act,[10] a motion to compel arbitration requires the moving party, in this case defendants, to show the absence of any genuine issue of material fact, and an entitlement to judgment as a matter of law, through evidence sufficient to

---

[7](Doc. 1 at ¶ 0.0.0.0.0.0.0.0.43.)

[8](Doc. 1 at ¶ 0.0.0.0.0.0.0.0.45.)

[9](Doc. 1 at ¶ 0.0.0.0.0.0.0.0.46.)

[10]9 U.S.C. §§ 1–16.

demonstrate an enforceable agreement to arbitrate.[11]

Plaintiffs contend that defendants have failed to produce sufficient evidence demonstrating an enforceable agreement to arbitrate.  Defendants produced evidence that the 2002 franchise agreement between plaintiffs and defendant Brooke Corporation had an arbitration clause.  Yet plaintiffs contend that this is insufficient because defendants produced no financing documents concerning plaintiffs' 2002 purchase of Slaton Insurance.  This argument lacks merit as defendants need only produce evidence demonstrating an arbitration agreement.[12]  The arbitration clause in plaintiffs' 2002 franchise agreement with Brooke Corporation is broad enough to extend to all of plaintiffs' claims against Brooke Corporation in this action because it covers "[a]ny issue, claim, dispute or controversy that may arise out of, in connection with or relating to the Franchise Agreement (including addenda) and/or the relationship of the parties . . . ."  Arbitration clauses that extend to any controversies arising out of or relating to the agreement are considered broad.[13]

But the arbitration clause in the 2002 franchise agreement is even broader.  For it not only applies to disputes arising out of or relating to the franchise agreement, but it also applies to disputes concerning the parties' relationship.  Given that, plaintiffs' claims against Brooke

---

[11]*Cravens v. Red Bull N. Am., Inc.*, No. 06-2324-JWL, 2006 WL 3343733, at *2 (D. Kan. Nov. 16, 2006) (citations omitted); *In re Universal Serv. Fund Tel. Billing Practices Litig*, 300 F. Supp. 2d 1107, 1117 (D. Kan. 2003).

[12]Because the movant need only produce evidence demonstrating an arbitration agreement, it is unnecessary for the movant to produce all documents associated with these transactions.  Thus, plaintiffs' argument that defendants failed to produce the financing documents related to the purchase of Slaton Insurance is inapposite. *See In re Universal Serv. Fund Tel. Billing Practices Litig.,* 300 F.Supp.2d at 1117.

[13]*See Ketchum v. Almahurst Bloodstock IV*, 685 F. Supp. 786, 791 (D. Kan. 1988) (citation omitted) ("arising out of or relating to this agreement" is a broad arbitration clause); *see also Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (citation omitted) (stating that "[a]ny claim or controversy arising out of or relating to th[e] agreement" is the paradigm of a broad clause).

6

Corporation all fall within the scope of the arbitration clause in the 2002 franchise agreement.  In Count I, plaintiffs claim that Brooke Corporation breached the 2002 franchise agreement, a claim that surely arises under that contract.  In Count II, plaintiffs claim that Brooke Corporation breached its fiduciary duties created by the franchise agreement, a claim that also arises under, or is connected with or related to the franchise agreement.  In Count III, plaintiffs claim that Brooke Corporation made fraudulent representations concerning the payment status of plaintiffs' loans from Brooke Credit, which representations were based on Brooke Corporation's failure to properly account for sales commissions owed to plaintiffs.  Again, this claim either arises under, is connected to, or relates to the franchise agreement.  At the least, this claim concerns the relationship between plaintiffs and Brooke Corporation.  In Count IV, plaintiffs bring a claim for constructive trust against Brooke Corporation for profits that Brooke Franchise derived from its purchase of Patrick Higgins & Company, a sale which resulted from the aforementioned fraudulent representations and breach of fiduciary duty.  This claim is within the scope of the 2002 franchise agreement's arbitration clause.  Similarly, plaintiffs' claims for fraud in Count VI, and for conversion in Count VII are also within the scope of the arbitration clause.  Finally, plaintiffs' claim for attorney fees in Count V is based on a contractual right in the 2002 franchise agreement, and thus clearly arises under such contract.

Furthermore, to the extent plaintiffs are arguing that defendants have failed to sufficiently demonstrate an agreement to arbitrate with Brooke Credit, the financier of both the 2002 and 2003 purchases, plaintiffs' argument is without merit.  Plaintiffs contend that its claims against Brooke Credit are not subject to arbitration because "[t]he crucial and principal agreement" with Brooke Credit is the 2002 agreement to advance loan, which does not include an arbitration

7

clause.  This argument fails for several reasons.  First, there is no authority for the argument that there must be an arbitration clause in the 2002 loan agreement for *any* claims against Brooke Credit to be arbitrable.  Second, the arbitration clauses in the 2003 financing agreements with Brooke Credit are broad enough to cover claims arising out of the 2002 financing agreement.  Although defendants did not produce the 2002 financing documents, they did produce the 2003 financing agreements between plaintiffs and Brooke Credit.  And, these 2003 financing agreements contain broad arbitration clauses.

Moreover, the arbitration clause in the 2003 agreement for advancement of loan, by its terms not only covers issues, claims, disputes or controversies arising out of the 2003 loan, but any such disputes that are connected with or related to the loan and its breach.  The arbitration clause in the 2003 line of credit agreement is even broader; it extends not only to issues, claims, disputes or controversies arising out of the 2003 loan, but any such disputes that arise out of, are connected with or relate to "the relationship of the parties."  The broad language in these arbitration clauses thus extends to plaintiffs' claim in this case that Brooke Credit breached its fiduciary duties by failing to properly identify earned commissions and failing to properly credit them to plaintiffs' loan account.  While defendants did not produce the financing agreements related to plaintiffs' purchase of Slaton Insurance in 2002, this does not affect the arbitrability of plaintiffs' claims against Brooke Credit in this action.  Indeed, in their Complaint, plaintiffs claim that Brooke Credit had a fiduciary relationship with plaintiffs "as a result of the Franchise Agreement and the financing Defendants had provided to Plaintiffs for the purchasing of Slaton Insurance and Beaches Insurance . . . ."[14]  Plaintiffs make no distinction between the 2002 and

---

[14](Doc. 1 at ¶ 0.0.0.0.0.0.0.0.64.)

2003 transactions in claiming that Brooke Credit breached its fiduciary duty; and the 2003
financing agreements include arbitration clauses broad enough to extend to the entirety of
Brooke Credit's fiduciary responsibilities in the 2002 and 2003 transactions.  Notably, the Tenth
Circuit has enforced application of an arbitration agreement to an earlier transaction when the
agreement mandated arbitration for "any controversy between [the parties] arising out of
[plaintiff's] business or this agreement."[15]

Similarly, the broad language in these 2003 arbitration clauses extends to plaintiffs' other
claims against Brooke Credit in this action.  In Count IV, plaintiffs bring a claim for constructive
trust against Brooke Credit for profit that Brooke Franchise derived from the 2004 sale of Patrick
Higgins & Company to Brooke Franchise.  In Count VI, plaintiffs claim bring a claim of fraud,
again associated with the sale of their insurance agency to Brooke Franchise.  In Count VII,
plaintiffs bring a claim of conversion based on unauthorized possession of sales commissions
that plaintiffs claim were duly owed to them.  These claims flow from the claim of breach of
fiduciary duty, for plaintiffs claim that because defendants failed to properly account for sales
commissions, plaintiffs were led to believe that they needed to sell their insurance agency to
avoid the ramifications of defaulting on their loans with Brooke Credit.  Moreover, plaintiffs'
claim for attorney fees in Count V is arbitrable because it falls within the broad scope of the
2003 arbitration agreements with Brooke Credit, and also is a claim that arises out of plaintiffs'
contractual rights as spelled out in the 2003 financing agreements with Brooke Credit.  In short,
defendants have produced sufficient evidence of arbitration agreements covering the claims
against Brooke Credit, as well as Brooke Corporation.

---

[15]*Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 13 F.3d 330, 332 (10th Cir. 1993).

Plaintiffs also maintain that the arbitration agreements are not binding because not all of the "responsible, necessary and affected parties signed the arbitration agreements at issue." Plaintiffs contend that Beaches Insurance was a necessary party to the 2003 transactions, yet was not a signatory on the franchise or financing agreements.  But plaintiff does not expound on this novel theory, that the seller of a business entity is a necessary party to transactions and agreements between the buyer and the buyer's financier and franchiser.

Plaintiffs also contend that because Brooke Credit was not a party to the 2002 or 2003 franchise agreements, it cannot be compelled into arbitration.  Of course, this argument ignores the fact that Brooke Credit was a party to two financing agreements in 2003 that contained arbitration clauses broad enough to extend to all of their claims against Brooke Credit in this action.  Plaintiffs object to what they characterize as Judge Sebelius's "intertwined analysis." Plaintiffs complain that in determining the enforceability and applicability of the arbitration agreements, Judge Sebelius failed to recognize that Brooke Credit is a separate and distinct legal entity from Brooke Corporation.[16]  But plaintiffs misconstrue Judge Sebelius's analysis, which was not that defendants were intertwined, rather that plaintiffs' claims in this case are intertwined.  Indeed, in Count II (fiduciary relationship), Count IV (constructive trust), Count V (attorney fees) and Count VI (fraud), plaintiffs' claims against Brooke Corporation and Brooke Credit are intertwined and indistinguishable.  Plaintiffs' claims against Brooke Corporation and Brooke Credit in all of these counts stem from the improper accounting of sales commissions and improper crediting of these revenues to plaintiffs' loans with Brooke Credit, thereby

---

[16]Plaintiffs go on to argue that the arbitration clauses in agreements with Brooke Corporation cannot be applied to Brooke Credit through the doctrines of alter ego or equitable estoppel, nor as a third party beneficiary of the franchise agreement.  But as explained above, these arguments are not applicable because Judge Sebelius did not find that the defendants were intertwined, but rather that the claims are intertwined.

enabling Brooke Franchise to purchase Patrick Higgins & Company for under market value, through fraud and fraudulent representations by both Brooke Corporation and Brooke Credit. Thus, plaintiffs' claims against these two defendants are intertwined.

Plaintiffs further contend that the arbitration agreements are not enforceable because there were oral agreements between the parties.  Given that there are enforceable arbitration agreements between these parties, the Court is mindful of the strong policy favoring arbitration for dispute resolution, and that arbitration clauses are to be broadly construed.[17]  In fact, there is a presumption of arbitrability if the claim implicates issues of contract construction or the parties' contractual rights and obligations.[18]  As Judge Sebelius notes, the scope of an arbitration clause is a question of law, so long as it is susceptible to only one reasonable interpretation and interpretation does not depend on extrinsic evidence.[19]

Plaintiffs object that there is such extrinsic evidence—oral agreements between the parties that plaintiffs claim affect the breadth and scope of the arbitration clauses at issue.  But plaintiffs offer no support for this allegation, and thus fail to raise a genuine issue of fact. Moreover, even if there were oral representations or agreements, the broad scope of these arbitration agreements would include such oral agreements or other matters collateral to the contracts.[20]  For the language of these arbitration agreements is clear and subject to one

---

[17]*Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1514 (10th Cir. 1995); *Feil v MBNA Am. Bank, N.A.*, 417 F. Supp. 2d 1214, 1219 (D. Kan. 2006) (stating that the court in *Zink* "[i]n reviewing" the breadth of the arbitration clause was "guided by the principal [sic] that arbitration agreements are favored and are to be broadly construed with any doubts being resolved in favor of coverage.") (quoting *Zink*, 13 F.3d at 332).

[18]*Feil*, 417 F. Supp. 2d at 1219 (citing *Cummins v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005)).

[19]*Zink*, 13 F. 3d at 332.

[20]*See Feil*, 417 F. Supp. 2d at 1219.

reasonable interpretation; arbitration applies not only to issues, disputes, claims or controversies arising out of the agreement itself, but also those that *relate* to the agreement or to the *relationship of the parties*.

Finally, plaintiffs contend that the arbitration agreements are not enforceable "because the contract is void or voidable because of fraud in the *factum* (or in the inducement)."[21]  As Judge Sebelius explained, a claim of fraud in the inducement of the contract is a claim that challenges the validity of the contract as a whole and must be decided by the arbitrator.[22]  Unless the challenge is to the validity of the arbitration clause itself, rather than to the entire contract, the Federal Arbitration Act requires that such a claim be considered by the arbitrator.[23]

But plaintiffs' Complaint does not state a claim of fraud in the inducement of any of the contracts at issue such that plaintiffs are challenging the validity of the arbitration clauses themselves.  For example, in Count I, for breach of the 2002 franchise agreement, the Complaint states "Such Franchise Agreement was offered and accepted by both parties based on full disclosure and proper consideration."[24]

In Count III, for fraudulent misrepresentation, the Complaint states that defendants made fraudulent statements between September 2002 and October 2004.[25]  The Complaint states that defendants "willfully, purposely and wantonly set up accounting procedures" in order to prevent

---

[21](Doc. 17 at 6).

[22]*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 126 S.Ct. 1204, 1210 (2006).

[23]*Id.* at 1209.

[24](Doc. 1 at ¶ 0.0.0.0.0.0.0.0.55.)

[25](Doc. 1 at ¶ 0.0.0.0.0.0.0.0.78.)

plaintiffs from being properly credited for their commissions,[26] and to fraudulently induce

plaintiffs to believe that they were in default and that they should sell their insurance agency.[27]

This was after the 2002 franchise agreement was entered into, but before and during the

formulation of the franchise and financing agreements for plaintiffs' purchase of Beaches

Insurance in 2003.  Yet the Complaint does not state that these representations induced them to

buy Beaches Insurance.  Nonetheless, to the extent the Complaint is liberally construed to state a

claim of fraud in the inducement of the 2003 contracts, there is no claim that the fraud induced

the arbitration clause(s) specifically rather than the contracts as a whole.

And, in Count VI, plaintiffs bring a claim against Brooke Corporation and Brooke Credit

for "Fraud in the Inducement."  The Complaint states that based on the fraudulent

misrepresentations, plaintiffs agreed to sell their insurance agency to Brooke Franchise, an

affiliate of the defendants, for significantly less than its value.[28]  Again, to the extent the

Complaint states a claim of fraud in the inducement of the 2004 sales transaction, there is no

claim that the fraud induced the inclusion of arbitration clause in any contracts related to that

sale.[29]

While claims of fraud in the inducement challenging the validity of the entire contract are

determined in arbitration, a claim that the arbitration clause is void, by fraud in the factum or

---

[26](Doc. 1 at ¶ 0.0.0.0.0.0.0.0.0.79.)

[27](Doc. 1 at ¶ 0.0.0.0.0.0.0.0.0.87, 91–93.)

[28](Doc. 1 at ¶ 0.0.0.0.0.0.0.0.0.0.107.)

[29]In fact, plaintiffs do not bring a claim based on the 2004 sales contract and do not bring a claim against the buyer, Brooke Franchise.

otherwise, is decided by the courts.[30]  This type of fraud that plaintiffs argue makes the contracts at issue void or voidable is fraud in the execution or making of the contract.  But the Complaint does not state that there was fraud in the execution or making of any of the contracts at issue in this case.  And, although in their objections to the Report and Recommendations, plaintiffs argue that there was fraud in the factum, they fail to raise any material issue concerning this, in that they have not supported this assertion with any reference to the record.

Therefore, for substantially the reasons set forth in the Report and Recommendations of Magistrate Judge Sebelius, the Court overrules and denies plaintiffs' objection, and the Court adopts the Report and Recommendations (Doc. 16) of Magistrate Judge Sebelius.

**IT IS THEREFORE ORDERED THAT** the Court adopts the Report and Recommendations (Doc. 16) of Magistrate Judge Sebelius and grants defendant's Motion to Compel Arbitration and Stay Proceedings (Doc. 8).

**IT IS SO ORDERED**.

Dated this 9th  day of August 2007.

    S/   Julie A. Robinson
HONORABLE JULIE A. ROBINSON
United States District Judge

Memorandum and Order Adopting Report and Recommendations, *Patrick Higgins & Company v. Brooke Corporation*, No. 06-4111

---

[30]Judge Sebelius appropriately distinguished this Court's decision in *Guang Dong LightHeadgear Factory Co., Inc. v. ACI Int'l, Inc.*, No. 03-4165-JAR, 2005 WL 1118130 (D. Kan. May 10, 2005), in which this Court did not *hold* that fraud in the inducement and fraud in the factum are indistinguishable.  Rather, this Court concluded that under the instant circumstances, there should be no distinction between fraud in the inducement and fraud in the factum, and that the Court should make an independent determination of the validity of the contract and therefore the arbitrability of the dispute. *Id.* at *8.  For in *Guang Dong*, there was no contract at all because there was no meeting of the minds to form the contracts at issue, and the Federal Arbitration Act did not apply; the contract was governed by the New York Convention, a treaty that governs multinational foreign arbitration awards; and furthermore, this Court did *not* hold that fraud in the inducement and fraud in fact are indistinguishable.

15